IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Keith Renard Bradley, #238111,    )   Civil Action No.:2:15-cv-02705-BHH-MGB
        )
        Petitioner,   )
        )   **REPORT AND RECOMMENDATION**
v.        )   **OF MAGISTRATE JUDGE**
        )
Warden Leroy Cartledge,    )
        )
        Respondent.   )

     The Petitioner, a state prisoner proceeding *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 18; *see also* Dkt. No. 19.)

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

     The Petitioner filed the instant action on or about June 25, 2015. (*See generally* Dkt. No. 1.) On October 27, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 18; *see also* Dkt. No. 19.) By order filed October 27, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 20.) On or about November 6, 2015, Petitioner filed a Motion to Amend. (Dkt. No. 22.) On December 30, 2015, the undersigned issued a Text Order granting the Motion to Amend and directing Respondent to supplement the Motion for Summary Judgment by January 29, 2016. (*See* Dkt. No. 27.) Respondent filed a Supplemental Return on January 28, 2016. (Dkt. No. 30.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on or about February 22, 2016. (Dkt. No. 31.) For the reasons set forth herein, the undersigned recommends granting Respondent's Motion for Summary Judgment (Dkt. No. 18.)

## PROCEDURAL HISTORY

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC") at McCormick Correctional Institution. In August of 2006, the Charleston County Grand Jury indicted Petitioner for murder. (R. at 676-77.) Petitioner was represented by Beattie Butler, Esquire, and Cody Graber, Esquire. (*See* R. at 1.) Petitioner proceeded to a jury trial before the Honorable Benjamin H. Culbertson on January 14-16 of 2008. (*See* R. at 1-480.) On January 16, 2008, the jury found Petitioner guilty of murder, and Judge Culbertson sentenced Petitioner to life in prison. (*See* R. at 467, 479.)[1]

Petitioner appealed and was represented by Joseph L. Savitz, III, Esquire, of the South Carolina Commission on Indigent Defense. (*See* R. at 483.) In an *Anders*[2] brief filed on March 3, 2009, Petitioner raised the following issue:

> The trial judge committed reversible error allowing into evidence an ambiguous statement appellant made at the time of his arrest, since its probative value was substantially outweighed by the danger of unfair prejudice, so that it was inadmissible under *Rule 403, SCRE.*

(R. at 487.) Mr. Savitz also filed a petition to be relieved as counsel. (R. at 492.) Petitioner filed a *pro se* brief in which he raised the following issue:

> The trial judge committed reversible error allowing into evidence the commission of another crime, due to the fact that the victim in this case was a female "junky" which allowed the jury to conclude Appellant was outside with the victim. This constitutes a "prior bad act" which is not admissible under Rule 404, SCRE.

(Dkt. No. 19-4 at 4 of 10.) In an unpublished opinion filed on January 21, 2010, the South Carolina Court of Appeals dismissed the appeal and granted counsel's request to withdraw. (R. at 495-96.) The matter was remitted to the lower court on February 8, 2010. (R. at 497.)

On February 25, 2010, Petitioner filed an application for post-conviction relief ("PCR"). (R. at 499-506.) Therein, Petitioner asserted he was in custody unlawfully due to the ineffective

---

[1]Petitioner was also on trial for kidnapping; the jury found him not guilty as to that charge. (*See* R. at 467.)

[2]*Anders v. California*, 386 U.S. 738 (1967).

assistance of counsel. (R. at 501.) Specifically, Petitioner contended counsel was ineffective for the following reasons:

> Counsel failed to present alibi defense[,] notwithstanding my advisement to him that my wife/lady friend was willing to testify that I was elsewhere during the time of the crime; counsel failed to use State's witness statement for credibility purposes; counsel failed to thoroughly cross-examine state witnesses as to whether they had been offered or promised leniency/a bargain in exchange for there [sic] testimony against me; also counsel fail[ed] to ascertain or question Hans Frazier and Cynthia Major as to whether they would have testified the same if the State had not offered or promised leniency/a bargain in return for their testimony against me. Moreover, counsel failed to ascertain or question Hans Frazier and Cynthia Major as to why they had not come forward or otherwise alerted authorities earlier (of my purported involvement in the crime in question). Additionally, counsel wrongfully instructed me to forego my right to testify in my defense. Furthermore, counsel failed to raise the affirmative defense of laches.

(R. at 506.) In September of 2011, Petitioner filed an amendment to his application for PCR, wherein he added the following grounds for relief:

> 1. Counsel was ineffective during trial for failing to cross-examine the applicant's cooperating co-defendant with evidence that the co-defendant was working with agents from the Federal Bureau of Alcohol, Tobacco and Firearms (ATF), which denied the applicant a meaningful cross-examination of an adverse witness, a violation of the applicant's Sixth Amendment right to confrontation.
>
> 2. Counsel was ineffective prior to trial for failing to interview applicant's cooperating co-defendant concerning his affiliation with the Federal Bureau of Alcohol, Tobacco and Firearm [sic] (ATF), and for failing to investigate independently concerning this issue.
>
> 3. Trial counsel was ineffective for failing to require the applicant's presence in chambers when he discussed with the judge and solicitor an anonymous phone call received at counsel's office concerning a juror in this case.
>
> 4. Trial counsel was ineffective for failing to object to the trial judge answering a jury's [sic] question during their deliberation without first consulting with counsel, the judge responding in writing or the ex parte communication resulting from the judge's course of action.
>
> 5. Counsel was ineffective for failing to object, ask the judge for curative instructions or move for a mistrial due to the solicitor's numerous reference[s] to Cynthia Major as being the applicant's surrogate mother both in opening statement and during closing argument, which appealed to the passion of the jurors.

6. Counsel was ineffective for failing to move for suppression of Cynthia Major and Hans Frazier's testimonies because the solicitor withheld the terms of the agreement that was made between the two individuals and the prosecution for their testimonies in the case, which is a <u>Brady</u> violation and a denial of due process of law.

(R. at 513-27.)

On September 15, 2011, an evidentiary hearing was held before the Honorable Deadra L. Jefferson. (R. at 532-643.) The record was left open at that hearing, and on November 16, 2011, a subsequent hearing took place before the Honorable Deadra L. Jefferson. (R. at 644-660.) Petitioner was present at both hearings and represented by William H. Nixon, Esquire. (*See* R. at 532, 644.) In an order dated January 19, 2012, Judge Jefferson denied the application for post-conviction relief and dismissed the petition. (R. at 661-75.)

Petitioner appealed, and on January 14, 2013, through attorney Breen Richard Stevens of the South Carolina Commission on Indigent Defense, filed a Petition for Writ of Certiorari. (*See* Dkt. No. 19-8.) Therein, Petitioner raised the following issues:

I. Whether Counsel's performance was constitutionally deficient for failing to independently investigate and locate a witness where the missing witness was the boyfriend of the State's first eyewitness and observed at the scene of the crime by the State's second eyewitness, were [sic] Counsel's trial strategy was based upon third-party guilt, where Counsel could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene, and where the PCR court repeatedly denied funding to petitioner for an investigator and experts to locate and link the missing witness to the crime scene?

II. Whether the PCR court reversibly erred by failing to grant PCR counsel's ex parte petition seeking funds for an investigator and experts to locate the boyfriend of the State's first eyewitness and compare his DNA and prints to the forensic evidence from the crime scene, where the boyfriend was observed at the scene of the crime by the State's second eyewitness, were [sic] Counsel's strategy was based upon third-party guilt, where Counsel could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene, and where the PCR court repeatedly denied funding to petitioner for an investigator and experts to locate and link the missing witness to the crime scene?

(Dkt. No. 19-8 at 3 of 24.)

4

In an order filed on July 23, 2014, the South Carolina Court of Appeals denied the petition for a writ of certiorari. (Dkt. No. 19-10.) The matter was remitted to the lower court on August 8, 2014. (Dkt. No. 19-11.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review:

> **Ground One(A)**: The trial judge committed reversible error allowing into evidence an ambiguous statement appellant made at the time of his arrest, since its probative value was substantially outweighed by the danger of unfair prejudice, so that it was inadmissible under *Rule 403*, SCRE.
>
> **Ground One (B)**: The trial judge committed reversible error allowing into evidence the commission of another crime, due to the fact that the victim in this case was a female "junky" which allowed the jury to conclude Appellant was outside with the victim. This constitutes a "prior bad act" which is not admissible under Rule 404 SCRE.
>
> **Ground Two**: Counsel's performance was constitutionally deficient for failing to independently investigate and locate a witness where the missing witness was the boyfriend of the State's first eyewitness, were [sic] Counsel's trial strategy was based upon third-party guilt, where Counsel could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene, and where the PCR court repeatedly denied funding to petitioner for an investigator and experts to locate and link the missing witness to the crime scene.
>
> **Ground Three**: The PCR court reversibly erred by failing to grant PCR counsel's ex parte petition seeking funds for an investigator and experts to locate the boyfriend of the State's first eyewitness and compare his DNA and prints to the forensic evidence from the crime scene, where the boyfriend was observed at the scene of the crime by the State's second eyewitness, were [sic] counsel's trial strategy was based upon third-party guilt, where Counsel could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene, and where the PCR court repeatedly denied funding to petitioner for an investigator and experts to locate and link the missing witness to the crime scene.
>
> **Ground Four**: Prosecutorial misconduct. Petitioner argues that Cynthia Major's and Hans Frasier's false/perjured testimony affected the outcome of the jury findings. SEE: <u>Gibson v. State</u>, 514 S.E.2d 320. When the solicitor deliberately deceived the court and jurors by presentation of known false evidence/testimony . . . . to also go uncorrected. SEE: <u>Washington v. State</u>, 478 S.E.2d 833 which denied Petitioner <u>due process per the U.S. Const. 14 Amend.</u> SEE <u>Davis v. Alaska</u>, 94 S. Ct. 1105, <u>Chambers v. Mississippi</u>, 410 U.S. 284, <u>Crane v. Kentucky</u>, 476 U.S. 683. Here, Petitioner argue[s] that the solicitor deliberately compromised the integrity of the fact

finding and truth seeking process by introducing the testimony of Major and Frasier testimonies [sic].

(Dkt. No. 1-1 at 1-28 of 28.)

Petitioner sought leave to amend his petition, which was granted on December 30, 2015. (*See* Dkt. No. 27; Dkt. No. 22.) In his amendment, he added the following claim of ineffective assistance of trial counsel (verbatim):

> [T]rial counsel failed to object to the prosecutorial misconduct for allowing perjured testimony of co-defendant Cynthia Major and Hans Frazier. Which my/Petitioner factual basis and clear and convincing evidence can be found as pointed out under ground four thus, Petitioner re-argue.

(Dkt. No. 22 at 2 of 3.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th

6

Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 18; *see also* Dkt. No. 19.) Before turning to the grounds for relief, the undersigned will briefly review some of the facts presented at the trial. Jerry Steen testified that on May 24, 2002, he was on his way back to Jacksonboro from Hollywood, when he noticed buzzards "fly up by the trash pile." (R. at 86.) When he went to investigate, he discovered a body; he then drove to the fire department and notified authorities. (R. at 86-87.) Paul McManigal of the Charleston County Sheriff's office testified that the decedent was Miriam Leeks and that several items were found near her body, including a sheet, a garbage bag on her body, and another garbage bag near her body. (R. at 132-33.) Cynthia Major testified that on the night in question, Petitioner came to her door and told her not to come outside; she took that to mean that Petitioner was outside having sex with a woman. (R. at 216-17.) She testified that she went back to bed, heard some moaning coming from outside, and then about ten to fifteen minutes later, heard a conversation between Petitioner and Hans Frazier, and then a "series

of thumps." (R. at 218-19.) Major testified that Petitioner and Hans Frazier then knocked at her back door. (R. at 218.) According to Major, Petitioner stated that he "bust the bitch head," and he had blood on his shirt. (R. at 221.) She testified that she gave Petitioner a black trash bag and a shirt that belonged to her husband. (R. at 222.) She stated that Frazier took a trash bag off her dresser. (R. at 223.) She also testified that State's Exhibit 14 looked like a sheet that belonged to her, but she never saw the sheet again after the night in question. (R. at 223-24.)

Hans Frazier testified that on the night in question, he and Petitioner were driving around in Petitioner's burgundy Toyota Camry. (R. at 241-42.) According to Frazier, they met a woman walking, and the woman eventually got into the vehicle with them when discussing a deal for exchanging drugs and sex. (R. at 243-44.) Frazier testified that Petitioner offered her crack in exchange for a sex act, and after stopping at a gas station for some beers and blunts, they proceeded to Major's house. (R. at 244-46.) Frazier stated that Petitioner gave the woman the first piece of crack cocaine, and she smoked it. (R. at 249.) Frazier testified that when the woman was done smoking, he asked her if she was "ready to take care of business." (R. at 249.) Frazier testified that the woman then "started hesitating like she didn't want to do her end of the deal." (R. at 250.) According to Frazier, both he and Petitioner got angry, and they began to hit and kick her. (R. at 250-57.) When hitting her and kicking her did not "shut her up," Petitioner picked up a shovel and hit her with it four or five times. (R. at 258-60.) Frazier testified that when she stopped moving, they put her in some bags and a sheet and wrapped her up. (R. at 261.) He then testified that they put the woman into the back of Petitioner's car and took her "[o]ut in the country." (R. at 264-65.)

Having briefly addressed the factual background of the case, the undersigned now turns to Petitioner's grounds for relief.

**A.    Ground One(A) and Ground One(B)**

In Ground One(A), Petitioner contends the trial judge erred in "allowing into evidence an ambiguous statement appellant made at the time of his arrest, since its probative value was substantially outweighed by the danger of unfair prejudice, so that it was inadmissible under *Rule*

8

*403*, SCRE." (Dkt. No. 1-1 at 1 of 28.) Petitioner makes a similar claim in Ground One(B), asserting that the trial judge erred in "allowing into evidence the commission of another crime, due to the fact that the victim in this case was a female 'junky' which allowed the jury to conclude Appellant was outside with the victim" and "constitutes a 'prior bad act' which is not admissible" under Rule 404 of the South Carolina Rules of Evidence. (Dkt. No. 1-1 at 3 of 28.)

Respondent contends that Ground One(A) and Ground One(B) "are not cognizable on federal habeas review" because "these allegations are limited to matters of state law." (Dkt. No. 19 at 14 of 34.) To the extent Petitioner complains that admission of evidence violated Rule 403 or Rule 404 of the South Carolina Rules of Evidence, such a claim is not cognizable in the case *sub judice*. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). As the Supreme Court stated in *Estelle*,

> [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Id*. at 67-68; *see also* 28 U.S.C. § 2254(a). Simply stated, state law issues are not cognizable in a federal habeas corpus proceeding. *See Smith v. Moore*, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law); *see also Bryant v. Cartledge*, Civ. A. No. 3:09–3234–CMC–JRM, 2010 WL 5588790, at *9 (D.S.C. Oct. 10, 2010), *adopted at* 2011 WL 145328 (D.S.C. Jan. 18, 2011) ("The South Carolina Supreme Court is the final arbiter of the law of South Carolina. Its determination of what the law of South Carolina means is final and cannot be reviewed by the federal courts unless the interpretation by the South Carolina Supreme Court implicates, and is in conflict with, an identified right protected by the United States Constitution."); *Monahan v. Burtt*, Civ. A. No. CIVA 205-2201-RBH, 2006 WL 2796390, at *7 (D.S.C. Sept. 27, 2006) ("Reliance on a state statute, and the state constitution, as a basis for relief simply fails to present a question of federal law. To the

extent the petitioner relies solely on state law, he has failed to present a matter cognizable under 28 U.S.C. § 2254.").[3]

The question before this Court is simply whether the admission of such evidence was fundamentally unfair or infringed upon a specific constitutional provision. *See Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000) ("In federal habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." (citations omitted)); *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993) ("In light of the Supreme Court's directive and our own precedent on this subject, we are of opinion that the admission of the DNA test results into evidence did not create circumstances impugning fundamental fairness or infringing specific constitutional protections." (internal quotation marks and citation omitted)); *Stockton v. Commonwealth of Va.*, 852 F.2d 740, 748 (4th Cir. 1988) ("[T]he admissibility of evidence is generally a matter of state law which does not properly concern a federal habeas court unless it impugns the fundamental fairness of the trial."). However, to the extent he attempts to make such an argument, it appears to be procedurally barred, as he did not raise any constitutional issue concerning this evidence to the trial court. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) (reversing grant of habeas relief where "[t]he state court, when presented with respondent's claim of error under the California Evidentiary Code, understandably confined its analysis to the application of state law," stating, "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." (citations

---

[3]In his Response in Opposition, Petitioner contends that "[a]lthough the lower courts may have reviewed this issue under State law, it was also reviewed under Jackson v. Denno." (Dkt. No. 31 at 1 of 6.) Petitioner states that he "re-argues" Ground One "as its [sic] set out in his habeas petition, because it was based on the Denno hearing." (*Id.*)

Of course, Petitioner did not, in his federal habeas petition, make a claim pursuant to *Jackson v. Denno*. Regardless, Petitioner is not entitled to any relief on such a claim. In *Jackson v. Denno*, 378 U.S. 368 (1964), the Court held that a criminal defendant has a "constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." *Jackson*, 378 U.S. at 376–77. In the case *sub judice*, the court conducted a *Jackson v. Denno* hearing right after selection of the jury, while the jury went to lunch. (R. at 46-58.) The judge ruled that the Petitioner's statement was voluntarily given. (R. at 58.) The undersigned discerns no constitutional violation in this ruling.

omitted)); *see also Herzog v. Thompson*, 14 F. App'x 786, 787-88 (9th Cir. 2001) (concluding argument that admission of evidence violated the petitioner's Due Process rights was procedurally defaulted where he argued in state court "that the evidence was not admissible under Oregon Evidence Code Rule 404(3) and 403 (rather than the Constitution)").

Even if these claims are not procedurally defaulted, the undersigned recommends concluding that Petitioner is not entitled to federal habeas relief. As to Ground One(A), Detective Rywelski of the Charleston County Sheriff's Office testified that on March 17, 2006, he executed a search warrant at a particular residence. (R. at 335-36.) Rywelski testified that Petitioner was present at the residence, and Rywelski read Petitioner his *Miranda* rights. (R. at 336.) Petitioner was transported to the Charleston County Detention Center, and after Rywelski and Petitioner arrived, Rywelski again advised Petitioner of his *Miranda* rights. (R. at 336-37.) Rywelski further testified as follows:

Q. And what did you do with the warrant at that time?

A. I let [Petitioner] hold the warrant. He looked at them and I read him his warrants.

Q. And what did he–what happened after you read the warrant?

    MR. BUTLER: Judge, I have to renew my pretrial objection, Rule 403.

    THE COURT: So noted.

    MR. LAWTON [the solicitor]: Thank you, Judge.

BY MR. LAWTON:

Q. What did you do once you handed it back to him?

A. I started to read the affidavit part of the warrant explaining what the arrest warrant was for and what the probable cause for the arrest was.

Q. And what did the [Petitioner] do?

A. He didn't quite understand after the first time I read him [sic], didn't understand what was going on, what the warrant was about. So I re-read the warrants to him again.

Q. And what did the [Petitioner] say?

A. After getting him through the warrants, he kind of looked puzzled a little bit and he wanted to know why the person named in the affidavit [that] gave us the information would say that about him because it was his mother's best friend.

Q. And do you know who that person was?

A. Cynthia Major.

Q. And what else did he comment on?

A. He made the comment after reading the warrant to him that she would have to come to court and testify–come to court and prove what she saw–prove what she stated as she was the only witness.

Q. And did the [Petitioner] make any other comments other than that?

A. Not that I can recall.

(R. at 337-39.)

Prior to trial, Mr. Butler argued to keep this statement out of the trial. (*See* R. at 57-59.) He

argued as follows:

> [T]he statement is ambiguous and arguably unfairly prejudicial to [Petitioner]. It's interesting that the detective's first explanation of the statement with the inference that they want the jury to make which is what he said was, well how can she say that, she was the only one there, she'll have to be in court to prove it.
>> That's not what he says. He says, she's the only witness. He just read that. She is named as the only witness. There's a co-defendant and there's a witness who names [Petitioner] as being involved in the murder.
>> So it supports two inferences. One he's responding to the content of the affidavit. Or there is the inference that the State wants the jury to make which is he's saying she was the only witness, meaning she was there and puts me there, puts the speaker, [Petitioner], there.
>> Usually that would go to the weight, not the admissibility. And I understand that, however, given the fact that it's a statement from the [Petitioner], I would argue that it's more prejudicial than probative and it's going to call for hearsay. The statements in the affidavit wouldn't come into evidence because they're hearsay and it's highly prejudicial.
>> So for that reason, I would move to keep the statement out. It's ambiguous, unfairly prejudicial, and calls for hearsay.

(R. at 57-58.) The trial judge ruled Petitioner's statement admissible. (R. at 58-59.)

12

The undersigned discerns no fundamental unfairness in the admission of this statement. It was a statement Petitioner made after having been issued a *Miranda* warning, and it could certainly be interpreted as inculpatory. *See Dowling v. United States*, 493 U.S. 342, 343-44, 352-54 (1990) (concluding that "fundamental fairness" did not bar the use of testimony "relating to an alleged crime that the defendant had previously been acquitted of committing"); *see also Willingham v. Mullin*, 296 F.3d 917, 928–29 (10th Cir. 2002) (refusing to grant relief on a habeas petitioner's claim that the admission of 22 photos of the victim's body was so unduly prejudicial as to render his trial fundamentally unfair, where the state court provided a reasonable basis for concluding that the photographs' relevance outweighed the danger of unfair prejudice); *Simpson v. Spencer*, 372 F. Supp. 2d 140, 146-49 (D. Mass. 2005) (rejecting petitioner's claim that he was denied due process of law and a fair trial by admission of his statement, "If I had a bullet, I would shoot the cop who hurt my head," stating, *inter alia*, "The petitioner has identified no Supreme Court case–and I have found none–that would deem this evidence irrelevant and preclude its admission on the ground that admission of the evidence would compromise the petitioner's right to a fair trial. Indeed, the SJC's ruling that the trial judge acted within her discretion in admitting the evidence is consistent with the Supreme Court's view that, 'in judicial trials, the whole tendency is to leave rulings as to the illuminating relevance of testimony largely to the discretion of the trial court that hears the evidence.' *Hamling v. United States*, 418 U.S. 87, 124–25, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (internal quotation marks and citation omitted). Accordingly, there is no basis for me to conclude that the trial court's determination of the relevance of the statement and the SJC's affirmance of that determination denied the petitioner a fair trial under clearly established Supreme Court precedent.").

As to Ground One(B), Petitioner argued that the trial judge erred in "allowing into evidence the commission of another crime, due to the fact that the victim in this case was a female 'junky' which allowed the jury to conclude Appellant was outside with the victim" and "constitutes a 'prior bad act' which is not admissible" under Rule 404 of the South Carolina Rules of Evidence. (Dkt. No. 1-1 at 3 of 28.) When Major was describing the events of the night in question, she testified that

around 11:30PM or midnight, Petitioner knocked at her front door. (R. at 206.) She further testified as follows:

Q. Was anybody with [Petitioner] at the door?

A. No, sir.

Q. Could you tell if anybody was in the car?

A. I saw shadows, but I can't see that good.

Q. But could you tell if anybody was in the car?

A. Barely; yes.

Q. What did he tell you when he got to the door?

A. He told me, me, Hans and a junky is outside, stay inside.

Q. What did you think he was referring to when he said junky?

A. A female.

Q. Female. Why is that?

A. Because [Petitioner] is known to come to my house with females–

MR. BUTLER: Objection. May we approach?

THE COURT: Yes.

(R. at 207.)

After a sidebar discussion, the judge excused the jury. (R. at 207.) Afterwards, the trial continued as follows, outside the presence of the jury:

THE COURT: All right. Mr. Butler, what was your objection now?

MR. BUTLER: The witness testified that my client told her when he knocked on the door for her to stay inside because, quote, me, Hans and a junky are in the car. Mr. Lawton asked her if she knew what that meant. And in explaining how she knew what that meant, she started to say [Petitioner] has been known to, and I don't know if she said bring, I think she said females. And the testimony that I was expecting was that [Petitioner] was known to have brought other females to her trailer for elicit [sic] purposes.

I assume by use of the term junky, drug users, I'm also assuming because of the other testimony, prostitutes. If so, that's a prior bad act offered to prove actions in conforming therewith, which is 404-B. of State versus Lyle.

14

And the bench State [sic] offered it as res jesti. It can't be res jesti unless it's more or less contemporaneous with the incident.

For example, if somebody is robbing someone and the State's purpose is to get money for drugs and shortly thereafter buy drugs, State versus Hough, . . . the drug transaction can be offered to prove the purpose of the robbery.

That's not what we have here. She's saying, I know he brought this woman here for these purposes because he had done it in the past. That's classic propensity evidence and it's excluded by 404-B and Lyle.

THE COURT: Well, I'm not sure what she's going to say. Let me hear from her, what her responses is going to be.

(R. at 208-09.)

The solicitor and the judge asked several questions of Ms. Major outside the presence of the jury. (R. at 210-11.) Ms. Major testified (outside the presence of the jury) as follows:

THE COURT: But I mean, what I've got to determine, Ms. Major, and what I'm trying to find out is you said that [Petitioner] said that me, Hans and a junky are out here, don't come out.

THE WITNESS: Okay.

THE COURT: How did you know that he meant he had a girl in the car?

THE WITNESS: He never brought a male over to my house.

THE COURT: He never what?

THE WITNESS: He never brought a male over to my house.

THE COURT: So it's not the fact that he referred to her as a junky, it was just the fact that he drove up in your driveway and said, don't come out?

THE WITNESS: Correct.

THE COURT: The fact that he told you not to come out.

THE WITNESS: I think that he was out there having sex.

THE COURT: Okay. I think you're right. The term junky really has got nothing to do with it. It's the fact that he told her not to come outside is what led her to believe that he was having sex outside.

15

MR. BUTLER: I don't have any problem if that's the explanation. If there's no reference to things he's done in the past. If she says because he told me not to come out, I assumed. I'm not even sure if it's okay for her to assume but I won't make that objection.

As long as it's not based upon something she says he's done in the past, I don't have an objection.

(R. at 211-12.)

The judge indicated that he was going to allow Ms. Major to testify as to "what [Petitioner] said because he said it," and (b) what Ms. Major took it to mean, "i.e., that he was out there with a girl." (R. at 214-15.) He also stated that he would allow Ms. Major to testify that she thought Petitioner was out there with a female because of "the fact that he had come to [her] trailer before, told [her] not to come out which is his way of saying [he is] out here with a girl because he had been there with a girl before." (R. at 215.) The solicitor stated that he would not "refer to any of the people in the past as junky," and the judge stated, "That was the word out of his mouth. She didn't draw any conclusion from that. She drew the conclusion that he's out there having sex with a girl by virtue of the fact that he said, don't come out." (R. at 215.) Mr. Butler stated he understood but objected: "Lyle and a separate objection to her speculating as to what he meant." (R. at 215.)

When the jury came back in, Ms. Major testified as follows:

Q. The [Petitioner] comes to your door. What did you think when he said, please stay inside?

A. Not to come out because he was having sex.

Q. Okay. And he had brought females over there before?

A. Not at this resident [sic] but at other residents [sic]; yes, sir.

Q. And in the past did he tell you to stay inside when he had females?

A. Yes, sir.

(R. at 216-17.)

The undersigned discerns no constitutional violation or fundamental unfairness in the admission of this testimony of Ms. Major. The reference to "junky" was Petitioner's own statement, and Ms. Major testified that she believed Petitioner was outside with a female because, in the past,

16

when he said "don't come outside," it was because he was outside with a female. Moreover, it does not appear that Major's testimony relayed any "prior bad act" of Petitioner to the jury. Admission of this testimony does not warrant federal habeas relief. The undersigned recommends granting summary judgment to Respondent as to Ground One(A) and Ground One(B).

**B.    Ground Two**

Petitioner contends in Ground Two that counsel was ineffective "for failing to independently investigate and locate" a "missing witness [who] was the boyfriend of the State's first eyewitness," given that counsel's "trial strategy was based upon third-party guilt" but counsel "could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene." (Dkt. No. 1-1 at 6 of 28.) Respondent contends that Petitioner is not entitled to relief on Ground Two because the "Petitioner cannot show that the denial of post-conviction relief was based on an unreasonable determination of the facts," nor can he "demonstrate that the state court unreasonably applied federal law." (Dkt. No. 19 at 28 of 34.)

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined

as "a probability sufficient to undermine confidence in the outcome." *Id*. While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The PCR court addressed this claim in its Order of Dismissal. (*See* R. at 661-75.) The PCR court first noted the testimony before the court:

> Trial counsel testified he represented Applicant at trial. He testified the State's evidence consisted of two (2) cooperating co-defendants. He asserted the DNA evidence and fingerprint evidence helped exclude Applicant as a contributor. Counsel testified the vaginal swab of the victim contained a mixture of three (3) people, and Applicant and co-defendant Hans Frazier were excluded. . . . Counsel testified the State's theory was the Applicant's car was used to take the victim away after the murder, but that theory was not consistent with the informant's story years later. Ms. Major testified at trial her boyfriend changed the color of her car. Counsel testified he wanted to know the identity of Ms. Major's boyfriend, but no one knew anything about him, and counsel did not believe the State knew or was prepared to tell the defense anything about the boyfriend. Counsel testified the boyfriend's identity would have been helpful to see if his DNA matched one of the three (3) unidentified individuals whose DNA was identified from the victim's vaginal swab. He asserted even without knowing the boyfriend's identity, he wanted to raise doubt that a third person could have been involved. He testified his theory was Ms. Major's boyfriend was the perpetrator, and Ms. Major and Mr. Frazier were covering for the boyfriend.
>
> Counsel testified he cross-examined Hans Frazier, who testified he thought Ms. Major's boyfriend was at the trailer at the time of the incident. Counsel testified he hired a fingerprint expert, and the expert excluded Applicant and Hans Frazier from the known prints. Counsel testified the prints could not be run through AFIS due to insufficient ridge detail. He asserted even if he knew the boyfriend's identity, his expert would have only been able to assert whether he could or could not exclude the boyfriend; he would not have been able to say whether it was a match due to insufficient points of comparison. . . . Counsel testified he did not think the jury believed Hans Frazier, but he thought the jury believed Cynthia Major. He further testified he fully explored Major's credibility.

(R. at 664-65.)

Turning to the merits of Petitioner's claim, the PCR court found Petitioner's testimony "lacks credibility while also finding trial counsel's testimony credible." (R. at 668.) The court further stated,

> Regarding Applicant's claims of ineffective assistance of counsel, this Court finds Applicant has failed to meet his burden of proof. This Court finds counsel

demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 5, 239 S.E.2d 750, 752 (1977); Strickland, 466 U.S. at 687-88; 104 S.Ct. at 2064-65; Butler, 286 S.C. at 442, 334 S.E.2d at 814. This Court further finds counsel adequately conferred with Applicant, reviewed the discovery with Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds counsel's representation did not fall below an objective standard of reasonableness.

. . .

This Court finds counsel was not ineffective for failing to locate Cynthia Major's boyfriend. Counsel testified no one knew who her boyfriend was at the time. He testified he wanted to know the identity of the boyfriend, but even without the boyfriend's identity, counsel was able to raise doubt that a third person could be involved. Even if the boyfriend was identified, there was no indication it would have resulted in a different outcome. The issue would be one of credibility due to the differing testimonies of Cynthia Major and Hans Frazier. Ms. Major testified on cross-examination that on the night of the incident there were six (6) of her children and four (4) of her neighbor's children in the trailer with her; however, her boyfriend at the time was not present that night. (Tr. 226:17-228:6.) Mr. Frazier was questioned on cross-examination regarding the differences between the story he gave earlier to law enforcement and his current story. Counsel asked Mr. Frazier if his previous statement, "She was in there with, I guess, her boyfriend. There was another fellow inside the trailer," was true, and he affirmed this statement was true. (Tr. 289:1-7.)

Moreover, the prints lifted from the scene were not put into AFIS due to insufficient ridge detail, as there were insufficient points for comparison. However, there was sufficient enough detail to exclude individuals. Therefore, even if the boyfriend was identified, there would be no one to compare his prints to the prints lifted at the scene. Defendant's hired expert, Donald Girndt, would not have been able to affirmatively state the lifted prints matched those of Ms. Major's boyfriend because there was insufficient detail.

This Court finds counsel met professional norms to exculpate his client. Counsel hired Donald C. Girndt to analyze the fingerprints lifted from the scene and compare them to the Applicant's prints. Mr. Girndt compared a partial palm print, suitable for identification, from a trash bag found near the victim's body with the Applicant's palm print, and he opined the palm print did not belong to the Applicant. (Tr. 357:11-19.) Mr. Girndt also compared the ridge detail developed on a plastic bag with [a] red handle and determined it was neither suitable for identification nor elimination. (Tr. 359:13-20.) However, Mr. Girndt pointed out a particular spot from another photo of the plastic bag with [the] red handle, and found that while it was not suitable for identification, it was suitable for elimination of the Applicant. (Tr. 361:2-8.) Mr. Girndt further excluded Applicant's fingerprint from the partial fingerprint in Defendant's Exhibit 1. (Tr. 365:3-22.) Further, Kenneth Bogan, forensic DNA analyst, with SLED, testified he examined thirteen (13) evidentiary items. Bogan testified a mixture of two (2) individuals was found on a cutting from a sheet (State's Ex. 3), but he was able to exclude the Applicant. He further testified the vaginal swab revealed a mixture of at least three (3) individuals, but he was also able to exclude the

Applicant. (State's Ex. 12.) On cross-examination, counsel focused on these findings, emphasizing the fact [that] Applicant was excluded. Counsel also pointed out that of the thirteen (13) evidentiary items, none of the tests generated results consistent with the Defendant.
. . .

Accordingly, this Court finds the Applicant failed to prove the first prong of the <u>Strickland</u> test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel omitted either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant failed to prove the second prong of <u>Strickland</u>, specifically that he was prejudiced by counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

(R. at 668-74.)

The state court's rejection of this claim of ineffective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law, nor did the adjudication result in an unreasonable determination of the facts. On cross-examination of Kenneth Bogan, the State's DNA expert, Mr. Butler focused on the two samples that yielded results other than the victim. (*See* R. at 111.) As to the cutting from a sheet, Bogan indicated that Petitioner's co-defendant, Hans Frazier, could not be excluded as a possible contributor to that sample. (R. at 111.) However, Petitioner was excluded entirely from that sample; the probability that Petitioner was a possible contributor to that sample was zero. (R. at 112.) As to the other sample, the vaginal swab of the victim, Bogan testified that he was able to exclude both Petitioner and Frazier as possible contributors to that sample. (R. at 112.) Furthermore, counsel asked Mr. Bogan as follows:

Q. And of the 13 different evidentiary items that you analyzed–and by evidentiary items, I mean those [that] were taken from crime scenes, none of the tests that you performed were able to generate any results that were consistent with [Petitioner]?

A. That's correct.

. . .

Q. And that would include the hairs, the fingernail clippings, the swabs, the cutting from the sheet; correct?

A. That is correct.

20

(R. at 113.) Furthermore, as noted by the PCR court, counsel hired a fingerprint expert, and this expert was able to exclude Petitioner, as well as Frazier, from the known prints. (R. at 665.)

Counsel testified that no one knew the identity of the boyfriend. (R. at 672; *see also* R. at 556.) The state court's finding that counsel was not ineffective for failing to locate the boyfriend is not contrary to, or an unreasonable application of, clearly established federal law, nor is such a conclusion based on an unreasonable determination of the facts. *See Blasi v. Attorney Gen. of the Commonwealth of Pa.*, 120 F. Supp. 2d 451, 474 (M.D. Pa. 2000) ("Logically, counsel cannot be ineffective for failing to call a witness whose identity was unknown and could not have been known, or who was unavailable at the time of trial."). Even today, the boyfriend has not been identified. Furthermore, even without knowing the identity of the boyfriend, counsel was–as noted by the PCR court–"able to raise some doubt that a third person could be involved." (R. at 672.) Counsel also testified as follows at the PCR hearing:

> Q. Did you discuss potential defenses with [Petitioner]?
>
> A. Yeah. The only defense was that it wasn't him.
>
> Q. I believe you testified earlier that your defense was that it was Cynthia's boyfriend?
>
> A. Yes. When I say that I mean to at least raise the specter of doubt that the third-person involved would have been not just some random person, it was helpful that we could place somebody there that nobody was talking about.

(R. at 578-79.) In light of the foregoing, the undersigned recommends concluding that Petitioner is not entitled to relief on this ground; the undersigned recommends granting summary judgment to Respondent as to Ground Two. *See Berry v. Palmer*, 518 F. App'x 336, 340 (6th Cir. 2013) (affirming denial of petition for writ of habeas corpus on claim that counsel was ineffective "for failing to procure a DNA analysis of the unidentified hair found on the victim's bed" where (a) "[i]nstead of pursuing further DNA testing, trial counsel chose to argue that the unidentified hair created reasonable doubt as to Berry's guilt," so "further testing of the hair to cast doubt on Berry's guilt would have been unnecessary," and (b) the petitioner cannot show prejudice where "the jury

was presented with exculpatory evidence showing that the unidentified hair found in the victim's bed did not belong to Berry, and it nonetheless rendered a guilty verdict based on other evidence presented at trial").

## C.     Ground Three

In Ground Three, Petitioner contends the PCR court erred in "failing to grant PCR counsel's ex parte petition seeking funds for an investigator and experts to locate the boyfriend of the State's first eyewitness and compare his DNA and prints to the forensic evidence from the crime scene." (Dkt. No. 1-1 at 11 of 28.) Petitioner asserts the "boyfriend was observed at the scene of the crime by the State's second eyewitness," and although counsel's "trial strategy was based upon third-party guilt," counsel "could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene." (Dkt. No. 1-1 at 11 of 28.) Respondent asserts this claim is "solely based in state law." (Dkt. No. 19 at 29 of 34.) According to Respondent, "this claim is not cognizable on federal habeas review because it reflects an issue governed independently by state law." (Dkt. No. 19 at 29 of 34.)

The undersigned agrees with Respondent. Errors in state PCR proceedings cannot serve as the basis for federal habeas corpus relief. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988); *see also Faulk v. Long*, Civ. A. No. C-13-5410 EMC (pr), 2015 WL 433578, at *8 (N.D. Cal. Feb. 2, 2015) (noting there is no "clearly established law from the Supreme Court finding a federal constitutional right to funds to investigate matters to present in a state collateral review petition"). Accordingly, the undersigned recommends granting summary judgment to Respondent as to Ground Three.

## D.     Ground Four

Petitioner contends in Ground Four that he is entitled to habeas relief due to "prosecutorial misconduct." (Dkt. No. 1-1 at 19 of 28.) Petitioner states (verbatim),

> Petitioner argues that Cynthia Major's and Hans Frasier's false/perjured testimony affected the outcome of the jury findings. SEE: <u>Gibson v. State</u>, 514 S.E.2d 320. When the solicitor deliberately deceived the court and jurors by presentation of known false evidence/testimony . . . . to also go uncorrected. SEE: <u>Washington v.</u>

22

State, 478 S.E.2d 833 which denied Petitioner due process per the U.S. Const. 14 Amend. SEE Davis v. Alaska, 94 S. Ct. 1105, Chambers v. Mississippi, 410 U.S. 284, Crane v. Kentucky, 476 U.S. 683. Here, Petitioner argue[s] that the solicitor deliberately compromised the integrity of the fact finding and truth seeking process by introducing the testimony of Major and Frasier testimonies [sic].

(Dkt. No. 1-1 at 19 of 28.)

Respondent asserts this claims if procedurally defaulted because "[t]his claim was not raised as an objection at any time in state court." (Dkt. No. 19 at 32 of 34.) Respondent further asserts that "there is no evidence of perjury, or that the prosecution knowingly presented false evidence," and the "perjury which is alleged is immaterial because Petitioner only points to inconsistencies between Frazier and Major's recollection of the details relating to the collective commission of the murder." (Dkt. No. 19 at 33 of 34.)

"Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) (quoting *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000)). As the Fourth Circuit stated in *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004),

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id*. at 845, 847, 119 S.Ct. 1728. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

*Longworth*, 377 F.3d at 448.

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).[4]

The undersigned recommends concluding that Ground Four is procedurally barred, as the claim was not raised during the trial or during the PCR proceedings. *See State v. Hoffman*, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (an issue which is not preserved cannot be raised for the first time on appeal); *State v. Rice*, 348 S.C. 417, 559 S.E.2d 360 (Ct. App. 2001); *see also See Breard v. Greene*, 523 U.S. 371, 375 (1988); *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Smith v. Secretary, Dep't of Corrs.*, 572 F.3d 1327, 1336-37 (11th Cir. 2009); *Crestwood Golf Club, Inc. v. Potter*, 328 S.C. 201, 215, 493 S.E.2d 826, 834 (1997); *Ward v. McLeod*, Civ. A. No. 3:01-0012-25BC, 2002 WL 31996018, at *4 (D.S.C. Apr. 18, 2002) ("When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.").

Regardless of the procedural bar, Petitioner is not entitled to relief on the merits. "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Badsen v. Lee*, 290 F.3d 602, 614 (4th Cir. 2002). To meet his burden of proof on such a claim, a petitioner must show that (1) perjured testimony was presented; (2) the prosecution knew the evidence was false; and (3) there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Boyd v. French*, 147 F.3d 319, 330 (4th Cir. 1998) (citations and internal quotations omitted). The testimony to which Petitioner points in his

---

[4]In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or abandonment by counsel. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)). Petitioner has not made any showing sufficient to overcome the procedural bar.

habeas petition, contending it was perjured testimony, involves inconsistencies that were highlighted at trial. (*See* Dkt. No. 1-1 at 21-28.) However, "[c]ontradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports, written statements, and the trial testimony of prosecution witnesses do not, standing alone, establish perjury." *Fairfax v. Scott*, 39 F.3d 319, at *1 (5th Cir. 1994) (citations omitted); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) ("Although the Government may have had doubts about the accuracy of certain aspects of [evidence], this is quite different from having knowledge of falsity."); *United States v. Bonsu*, 291 F. App'x 505, 511 (4th Cir. 2008) (concluding the appellants could not establish that the challenged testimony was perjured where appellants "knew of the [witnesses'] inconsistent statements and chose to use them extensively at trial for impeachment purposes," stating, "As the trier of fact, the jury weighed the competing evidence and found the government's witnesses and evidence to be more credible."); *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." (citation omitted)); *Macon v. Davis*, 450 F. App'x 491, 493 (6th Cir. 2011) (affirming denial of petition for writ of habeas corpus on claim that prosecutor denied petitioner a fair trial by knowingly using perjured testimony where, *inter alia*, "Grimmet testified that he was locked in the stairwell following the shooting and had to be let in by a neighbor," and the neighbor testified that "when she came out into the hall to investigate the gunshots, Grimmet was walking down the hall," stating, "[B]ecause both of these witnesses were heard by the jury, it was up to the jury to determine which witness was credible." (citation omitted)). The undersigned therefore recommends granting summary judgment to Respondent as to Ground Four.

## E.    Supplemental Ground

In his amendment, Petitioner added the following claim of ineffective assistance of trial counsel (verbatim):

> [T]rial counsel failed to object to the prosecutorial misconduct for allowing perjured testimony of co-defendant Cynthia Major and Hans Frazier. Which my/Petitioner factual basis and clear and convincing evidence can be found as pointed out under ground four thus, Petitioner re-argue.

(Dkt. No. 22 at 2 of 3.)

Respondent contends that Petitioner is not entitled to relief on his Supplemental Ground because it is procedurally defaulted. (Dkt. No. 30 at 2 of 8.) Respondent also contends that relief is not warranted on the merits, as "Petitioner presents no evidence of perjured trial testimony on the part of Frazier and Major, nor does he make any showing that the prosecution knowingly presented false evidence." (Dkt. No. 30 at 4-5 of 8.) Respondent states, "Instead, Petitioner's complaints regarding Major and Frazier's testimony encompass[] topics ripe for cross-examination, and Petitioner's trial counsel did duly cross-examine Frazier and Major on these points." (Dkt. No. 30 at 5 of 8.)

Respondent is correct that Petitioner never raised this claim of ineffective assistance of counsel to the state court. Accordingly, it is procedurally barred. Petitioner argues, however, that this court should consider the merits because PCR counsel was ineffective in failing to raise this claim. (*See* Dkt. No. 31 at 4 of 6.) Pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." However, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)); *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013). If the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support," the procedural default precludes federal habeas review. *Martinez*, 132 S. Ct. at 1319.

As detailed above, however, the claim of prosecutorial misconduct has no merit, so counsel was not ineffective in failing to object. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("counsel cannot be ineffective for failing to raise a meritless claim"). Moreover, most–if not all–of the inconsistencies in the testimony to which Petitioner points were brought out by counsel during the trial, and counsel argued many of them in his closing argument. In his closing, counsel pointed out that Ms. Major testified that she did not know Hans Frazier, but Frazier testified he knew her. (R. at 402.) Counsel noted that Frazier testified he left the bloody clothes with Major, but Major first told

26

the police she gave them to Frazier, then later said she gave them to Petitioner who burned them. (R. at 402.) Counsel stated, "Could it be that [Ms. Major's] boyfriend was there? . . . Another lie from Cynthia." (R. at 402.) He asks the jury to consider why Ms. Major would say her boyfriend was not there. (R. at 403.) Counsel points out that Ms. Major went to the police first and said nothing about her boyfriend, but Frazier "talk[ed] about the boyfriend all day long." (R. at 404.) Counsel argued repeatedly that Frazier was lying. (*See* R. at 404-11.) Counsel also stated, "Hans and Cynthia can't tell the same story because they're lying." (R. at 418.) Given that Petitioner's claim for prosecutorial misconduct fails, and that Petitioner's counsel did in fact highlight the inconsistencies in the testimony to the jury, Petitioner's claim that counsel was ineffective for failing to object to prosecutorial misconduct is without merit, and the procedural bar stands. *See Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015) ("We begin by noting that before Hanson can succeed on his counsel's failure-to-object claims, he must show that the underlying prosecutorial-misconduct claims themselves have merit. We conclude that none of Hanson's underlying prosecutorial-misconduct claims have merit. As such, we do not engage in an analysis of whether his counsel was ineffective for failing to object to them."); *Abrego v.Trammell*, Civ. A. No. 11-CV-0195-CVE-TLW, 2014 WL 3939094, at *10 (N.D. Okla. Aug. 12, 2014) ("As discussed above, Petitioner fails to show that the State knowingly presented perjured testimony. . . . In light of the foregoing discussion, Petitioner's trial counsel cannot be found to be ineffective for failing to object to conduct not found to be improper."). Accordingly, the undersigned recommends granting summary judgment to Respondent as to this Supplemental Ground.

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 18) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[5]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 19, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[5]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).