UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Keith Renard Bradley, #238111, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. 2:15-2705-BHH |
| v. | ) | |
| | ) | **ORDER** |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

On July 8, 2015, Petitioner Keith Renard Bradley ("Bradley" or "Petitioner"), proceeding *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 27, 2015, Respondent Warden Leroy Cartledge ("Cartledge" or "Respondent") filed a motion for summary judgment (ECF Nos. 18; 19). Bradley filed a motion to amend (ECF No. 22) on November 9, 2015, which the Court granted on December 30, 2015 (ECF No. 27). Respondent filed a supplemental return and memorandum in support of summary judgment on January 29, 2016 (ECF No. 30). Bradley filed his response in opposition on February 25, 2016 (ECF No. 31).

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the matter was referred to a United States Magistrate Judge for initial review. On July 19, 2016, Magistrate Judge Mary Gordon Baker issued a Report and Recommendation ("Report") outlining the issues and recommending that the Court grant Respondent's motion for summary judgment. Bradley filed written objections to the Report on September 9, 2016, to which Respondent replied on September 26, 2016; the matter

is ripe for review.

## BACKGROUND[1]

Petitioner was indicted in Charleston County in August 2006 for murder. Petitioner, who was represented by Beattie Butler, Esquire, and Cody Grabe, Esquire, proceeded to a jury trial before the Honorable Benjamin H. Culbertson on January 14-16, 2008. On January 16, 2008, the jury found Petitioner guilty of murder and not guilty of an accompanying kidnaping charge. Judge Culbertson sentenced Petitioner to life in prison.

On March 3, 2009, appellate counsel filed an *Anders* brief and a petition to be relieved as counsel. Petitioner filed a *pro se* brief on April 6, 2009. The South Carolina Court of Appeals dismissed the appeal and granted counsel's request to withdraw. The matter was remitted to the lower court on February 8, 2010.

On February 25, 2010, Petitioner filed an application for post-conviction relief ("PCR") raising a number of issues related to the putative ineffective assistance of counsel. In September 2011, Petitioner filed an amended application raising additional claims of ineffective assistance of counsel. An evidentiary hearing was held on September 15, 2011 and the record was left open until November 16, 2011, whereupon a subsequent hearing took place. By written order filed January 19, 2012, the PCR court denied relief.

Petitioner appealed the PCR court's denial of relief, but the South Carolina Supreme Court denied Petitioner's petition for a writ of certiorari on July 23, 2014; the matter was remitted to the lower court on August 8, 2014.

Petitioner next filed the instant § 2254 petition, raising the following grounds for

---

[1] This Court incorporates the "Procedural History" section of the Magistrate Judge's Report, which sets forth in greater detail the relevant facts of this case.

2

review:

**Ground One(A)**: The trial judge committed reversible error allowing into evidence an ambiguous statement appellant made at the time of his arrest, since its probative value was substantially outweighed by the danger of unfair prejudice, so that it was inadmissible under Rule 403, SCRE.

**Ground One (B)**: The trial judge committed reversible error allowing into evidence the commission of another crime, due to the fact that the victim in the case was a female "junky" which allowed the jury to conclude Appellant was outside with the victim. This constitutes a "prior bad act" which is not admissible under Rule 404, SCRE.

**Ground Two**: Counsel's performance was constitutionally deficient for failing to independently investigate and locate a witness where the missing witness was the boyfriend of the State's first eyewitness and observed at the scene of the crime by the State's second eyewitness, were [sic] Counsel's trial strategy was based upon third-party guilt, where Counsel could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene, and where the PCR court repeatedly denied funding to petitioner for an investigator and experts to locate and link the missing witness to the crime scene.

**Ground Three**: The PCR court reversibly erred by failing to grant PCR counsel's ex parte petition seeking funds for an investigator and experts to locate the boyfriend of the State's first eyewitness and compare his DNA and prints to the forensic evidence from the crime scene, where the boyfriend was observed at the scene of the crime by the State's second eyewitness, were [sic] Counsel's trial strategy was based upon third-party guilt, where Counsel could not meet the test of third-party guilt without linking the boyfriend to forensic evidence from the crime scene, and where the PCR court repeatedly denied funding to petitioner for an investigator and experts to locate and link the missing witness to the crime scene.

**Ground Four**: Prosecutorial misconduct. Petitioner argues that Cynthia Major's and Hans Frasier's [sic] false/perjured testimony affected the outcome of the jury findings. SEE: <u>Gibson v. State</u>, 514 S.E.2d 320. When the solicitor deliberately deceived the court and jurors by presentation of known false evidence/testimony . . . . to also go uncorrected. SEE: <u>Washington v. State</u>, 478 S.E.2d 833 [sic] Which denied Petitioner due process per the U.S. Const. 14 Amend. SEE: <u>Davis v. Alaska</u>, 94 S. Ct. 1105; <u>Chambers v. Mississippi</u>, 410 U.S. 284; <u>Crane v. Kentucky</u>, 476 U.S. 683. Here, Petitioner argue [sic] that the solicitor deliberately compromised the integrity of the fact finding and truth seeking process by introducing the

testimony of Major and Frasier [sic] testimony(ies) [sic].

(ECF No. 1-1 at 1, 3, 6, 11, 19.) In his amendment to his petition, Petitioner added the

following claim of ineffective assistance of counsel (verbatim):

> [T]rial counsel failed to object to the Prosecutorial misconduct, for allowing
> perjured testimony of co-defendant [sic] Cynthia Major and Hans Frazier.
> Which my/Petitioner factual basis and clear and convincing evidence can be
> found as pointed out under ground four. Thus, Petitioner re-argue.

(ECF No. 22 at 2.)

## STANDARDS OF REVIEW

### I.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to this Court. The

recommendation has no presumptive weight. The responsibility to make a final

determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).

The Court is charged with making a *de novo* determination of those portions of the Report

to which specific objection is made, and the Court may accept, reject, or modify, in whole

or in part, the recommendation of the Magistrate Judge, or recommit the matter with

instructions. 28 U.S.C. § 636(b)(1). However, the Court need not conduct a *de novo* review

when a party makes only "general and conclusory objections that do not direct the court

to a specific error in the magistrate's proposed findings and recommendations." *Orpiano*

*v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("[*D*]*e novo* review [is] unnecessary in . . .

situations when a party makes general and conclusory objections that do not direct the

court to a specific error in the magistrate's proposed findings and recommendation."). In

the absence of a specific objection, the Court reviews the Magistrate's conclusions only for

4

clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

In reviewing these pleadings, the Court is mindful of Petitioner's *pro se* status. When dealing with a *pro se* litigant, the Court is charged with liberal construction of the pleadings. *See, e.g., De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the Court can ignore a petitioner's clear failure to allege facts that set forth a cognizable claim, or that the Court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

## II.    Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson*, 477 U.S. at 248). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences

5

are to be drawn in that party's favor.'" *The News & Observer Publ'g Co.*, 597 F.3d at 576 (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## III.    Habeas Corpus

Because Moore filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applied a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. Factual determinations made by

6

the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV.    Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In *Strickland*, the Supreme Court held that a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient, and second, that counsel's deficient performance prejudiced the defense. *Id.* at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential," so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and fulfill the second prong of the ineffective assistance test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95.

### ANALYSIS

Prior to addressing Petitioner's various grounds for relief, the Court would note that the Report provides a helpful summary of the core facts presented at the trial, which the

Court incorporates here.[2] Jerry Steen testified that on May 24, 2002, he was on his way back to Jacksonboro from Hollywood, when he noticed buzzards "fly up by the trash pile." (R. at 86.) When he went to investigate, he discovered a body; he then drove to the fire department and notified authorities. (R. at 86-87.) Paul McManigal of the Charleston County Sheriff's office testified that the decedent was Miriam Leeks and that several items were found near her body, including a sheet and a garbage bag on her body, and another garbage bag near her body. (R. at 132-33.) Cynthia Major testified that on the night in question, Petitioner came to her door and told her not to come outside; she took that to mean that Petitioner was outside having sex with a woman. (R. at 216-17.) She testified that she went back to bed, heard some moaning coming from outside, and then about ten to fifteen minutes later, heard a conversation between Petitioner and Hans Frazier, and then a "series of thumps." (R. at 218-19.) Major testified that Petitioner and Hans Frazier then knocked at her back door. (R. at 218.) According to Major, Petitioner stated that he "bust the bitch head, and that mother fucker won't fuck with my shit anymore," that he was sweating, that he had a large can of beer in his hand, and that he had grass and sand on his hand as well as blood on his shirt. (R. at 221.) She testified that she gave Petitioner a black trash bag and a shirt that belonged to her husband. (R. at 222.) She stated that Frazier took a trash bag off her dresser. (R. at 223.) She also testified that State's Exhibit 14 looked like a sheet that belonged to her, but she never saw the sheet again after the night in question. (R. at 223-24.)

---

[2] As always, the Court says only what is necessary to address Petitioner's objections against the already meaningful backdrop of a thorough Report of the Magistrate Judge, incorporated by specific reference, herein, to the degree not inconsistent. Comprehensive recitation of law and fact exists there.

Hans Frazier testified that on the night in question, he and Petitioner were driving around in Petitioner's burgundy Toyota Camry. (R. at 241-42.) According to Frazier, they met a woman walking, and the woman eventually got into the vehicle with them when discussing a deal for exchanging drugs and sex. (R. at 243-44.) Frazier testified that Petitioner offered her crack in exchange for a sex act, and after stopping at a gas station for some beers and blunts, they proceeded to Major's house. (R. at 244-46.) Frazier stated that Petitioner gave the woman the first piece of crack cocaine, and she smoked it. (R. at 249.) Frazier testified that when the woman was done smoking, he asked her if she was "ready to take care of business." (R. at 249.) Frazier testified that the woman then "started hesitating like she didn't want to do her end of the deal." (R. at 250.) According to Frazier, both he and Petitioner got angry, and they began to hit and kick her. (R. at 250-57.) When hitting her and kicking her did not "shut her up," Petitioner picked up a shovel and hit her with it four or five times. (R. at 258-60.) Frazier testified that when she stopped moving, they put her in some bags and a sheet and wrapped her up. (R. at 261.) He then testified that they put the woman into the back of Petitioner's car and took her "[o]ut in the country." (R. at 264-65.)

## I.    Grounds One(A) and One(B)

In Ground One(A), Petitioner asserts that the trial judge erred by allowing into evidence an "ambiguous statement" he made at the time of his arrest, which was purportedly inadmissible under South Carolina Rule of Evidence 403. (ECF No. 1-1 at 1.) The statement to which Petitioner refers was testified to by Detective Rywelski at trial. (ECF No. 32 at 11-12; R. at 335-36.) Specifically, Detective Rywelski testified that after he read and explained the arrest warrant to Petitioner, Petitioner made the comment that

10

Cynthia Major would have to "come to court and prove what she saw–prove what she stated as she was the only witness." (*Id.*) Petitioner makes a similar claim in Ground One(B), asserting that the trial judge erred by allowing into evidence the "commission of another crime," because the murder victim was a "female 'junky,'" which permitted the jury to conclude that Petitioner was "outside with the victim," which evidence was purportedly inadmissible character evidence under South Carolina Rule of Evidence 404. (ECF No. 1-1 at 3.) Here, Petitioner is referring to Ms. Major's testimony that Petitioner told her to stay inside because he was outside her home with "Hans and a junky," which she took to mean that he was having sex with a female because Petitioner had told her not to come outside in the past when he brought females over to have sex. (ECF No. 32 at 13-17; R. at 206-217.)

In her Report, the Magistrate Judge concluded: (1) to the extent Petitioner complains that admission of the evidence in question violated Rule 403 or Rule 404 of the South Carolina Rules of Evidence, such a claim is not cognizable in a § 2254 petition; (2) to the extent the Petitioner claims that the admission of such evidence was fundamentally unfair or infringed upon a specific constitutional provision, his claims were procedurally defaulted; (3) even if these claims are not procedurally defaulted, the claims lack substantive merit because the admission of the evidence in question constituted neither fundamentally unfairness nor infringement of a specific constitutional right; and, (4) summary judgment should be granted in favor of Respondent with respect to Ground One(A) and Ground One(B). (ECF No. 32 at 8-17.) After laying out the legal basis for these conclusions, the Magistrate Judge reviewed, and quoted, the relevant evidence of record, including Petitioner's counsel's objections, the substance of the testimony in question, and

11

the reasoning supporting the trial court's admission of the evidence. (*Id.* at 11-17.)

In his objections, Petitioner states that his "arguments on Ground One(A) & Ground One(B) are arguments that his right to due process of law under the Fourteenth Amendment has been violated in State Court." (ECF No. 37 at 5.) With respect to Ground One(A) he argues that "the Magistrate's recitation of Detective Rywelski's testimony . . . establishes a genuine dispute as to whether the Petitioner was prejudiced by the Detective's testimony, the testimony is incriminating, therefore, the Respondent is not entitled to summary judgment on this ground as a matter of law." (*Id.* at 6.) Regarding Ground One(B), Petitioner argues that "Ms. Major's testimony that a female referred to by the Petitioner as a 'junky' should have been excluded because . . . the testimony misled the jury into believing that the Petitioner has a propensity to commit crimes, in this case, drug dealing or prostitution, in that the Petitioner traded drugs for sex with the 'junky.'" (*Id.*) Petitioner further asserts, "This type of character evidence is inadmissible because it violates State and Federal rules of court." (*Id.*) The remainder of Petitioner's objections with respect to Ground One(A) and One(B) are simply rehashed versions of why he believes the evidence was not admissible and conclusory statements about how the State purportedly failed to satisfy its burden to prove the elements of the offense beyond a reasonable doubt before depriving him of his liberty. (*See id.* at 5-8.) After review, the Court finds Petitioner's objections to be without merit.

None of Petitioner's objections raise a colorable explanation for why his theories regarding the avowed inadmissibility of certain trial testimony under state evidentiary rules are cognizable in this § 2254 petition. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991)

("'[F]ederal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). None of Petitioner's arguments refute the fact that these theories are also procedurally barred. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) (reversing grant of habeas relief where "[t]he state court, when presented with respondent's claim of error under the California Evidentiary Code, understandably confined its analysis to the application of state law," and stating, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, *not only in federal court, but in state court*" (emphasis added, citations omitted)). Furthermore, even assuming these theories were cognizable in a habeas proceeding and not procedurally barred, Petitioner's arguments are unpersuasive that the evidentiary rulings were wrong in the first instance. A review of the relevant portions of the trial transcript reveals no fundamental unfairness, and no deprivation of Petitioner's constitutional right to due process. Accordingly, the Court overrules Petitioner's objections, adopts the Magistrate Judge's reasoning and recommendation, and grants Respondent's motion for summary judgment on Grounds One(A) and One(B).

## II.    Ground Two

As his second ground for relief, Petitioner contends that his trial counsel rendered ineffective assistance by failing to independently investigate and locate Ms. Major's ("the State's first eyewitness") boyfriend, whom Mr. Frazier ("the State's second eyewitness") stated he observed at the trailer behind which the murder occurred, because counsel's trial strategy was to establish the guilt of a third-party and counsel could not effectively

establish this defense without linking Ms. Major's boyfriend to the forensic evidence that was recovered. (*See* ECF No. 1-1 at 6.) At the end of this ineffective assistance claim, Petitioner adds an additional assertion that "the PCR court repeatedly denied funding to petitioner for an investigator and experts to locate and link the missing witness to the crime scene." (*Id.*)

In her Report, the Magistrate Judge correctly states the law regarding ineffective assistance of counsel claims and review of such claims in the context of a § 2254 petition. (ECF No. 32 at 17-18.) The U.S. Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687- 96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine

confidence in the outcome." *Id*. While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The Magistrate Judge next outlines the PCR court's treatment of Petitioner's ineffective assistance claim in its order of dismissal. (ECF No. 32 at 18; R. at 661-75.) Specifically, trial counsel testified at the PCR hearing, *inter alia*, that "he wanted to know the identity of Ms. Major's boyfriend, but no one knew anything about him, and counsel did not believe the State knew or was prepared to tell the defense anything about the boyfriend." (R. at 664.) The reason counsel wanted this information was because "the boyfriend's identity would have been helpful to see if his DNA matched one of the three (3) unidentified individuals whose DNA was identified from the victim's vaginal swab," but, "even without knowing the boyfriend's identity, he wanted to raise doubt that a third person could have been involved." (R. at 664-65.) Moreover, trial counsel further testified that

> he cross-examined Hans Frazier, who testified he thought Ms. Major's boyfriend was at the trailer at the time of the incident. Counsel testified he hired a fingerprint expert, and the expert excluded [Petitioner] and Hans Frazier from the known prints. Counsel testified the prints could not be run through AFIS due to insufficient ridge detail. He asserted even if he knew the boyfriend's identity, his expert would have only been able to assert whether he could or could not exclude the boyfriend; he would not have been able to say whether it was a match due to insufficient points of comparison.

(R. at 665.)

When deciding the merits of Petitioner's claim, the PCR court found trial counsel's testimony to be credible and that Petitioner had failed to meet his burden of proof to show

15

that counsel rendered ineffective assistance. (R. at 668.) The PCR court further found

counsel was not ineffective for failing to locate Cynthia Major's boyfriend. Counsel testified no one knew who her boyfriend was at the time. He testified he wanted to know the identity of the boyfriend, but even without the boyfriend's identity, counsel was able to raise doubt that a third person could be involved. Even if the boyfriend was identified, there was no indication it would have resulted in a different outcome. The issue would be one of credibility due to the differing testimonies of Cynthia Major and Hans Frazier. Ms. Major testified on cross-examination that on the night of the incident there were six (6) of her children and four (4) of her neighbor's children in the trailer with her; however, her boyfriend at the time was not present that night. (Tr. 226:17-228:6.) Mr. Frazier was questioned on cross-examination regarding the differences between the story he gave earlier to law enforcement and his current story. Counsel asked Mr. Frazier if his previous statement, "She was in there with, I guess, her boyfriend. There was another fellow inside the trailer," was true, and he affirmed this statement was true. (Tr. 289:1-7.)

Moreover, the prints lifted from the scene were not put into AFIS due to insufficient ridge detail, as there were insufficient points for comparison. However, there was sufficient enough detail to exclude individuals. Therefore, even if the boyfriend was identified, there would be no one to compare his prints to the prints lifted at the scene. Defendant's hired expert, Donald Girndt, would not have been able to affirmatively state the lifted prints matched those of Ms. Major's boyfriend because there was insufficient detail.

This Court finds counsel met professional norms to exculpate his client. Counsel hired Donald C. Girndt to analyze the fingerprints lifted from the scene and compare them to the Applicant's prints. Mr. Girndt compared a partial palm print, suitable for identification, from a trash bag found near the victim's body with the Applicant's palm print, and he opined the palm print did not belong to the Applicant. (Tr. 357:11-19.) Mr. Girndt also compared the ridge detail developed on a plastic bag with [a] red handle and determined it was neither suitable for identification nor elimination. (Tr. 359:13-20.) However, Mr. Girndt pointed out a particular spot from another photo of the plastic bag with [the] red handle, and found that while it was not suitable for identification, it was suitable for elimination of the Applicant. (Tr. 361:2-8.) Mr. Girndt further excluded Applicant's fingerprint from the partial fingerprint in Defendant's Exhibit 1. (Tr. 365:3-22.) Further, Kenneth Bogan, forensic DNA analyst, with SLED, testified he examined thirteen (13) evidentiary items. Bogan testified a mixture of two (2) individuals was found on a cutting from a sheet (State's Ex. 3), but he was able to exclude the Applicant. He further testified the vaginal swab revealed a mixture of at least three (3) individuals, but he was also able to exclude the Applicant. (State's Ex. 12.) On cross-examination, counsel focused on these findings, emphasizing the fact [that] Applicant was excluded. Counsel also pointed out that of the

thirteen (13) evidentiary items, none of the tests generated results consistent with the Defendant.

. . .

Accordingly, this Court finds the Applicant failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel omitted either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant failed to prove the second prong of Strickland, specifically that he was prejudiced by counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

(R. at 672-74.)

The Magistrate Judge next highlights various portions of the trial transcript and PCR record that demonstrate trial counsel's efforts to exculpate his client through cross-examination of the State's DNA expert and introduction of a defense fingerprint expert. (*See* ECF No. 32 at 20-21.) Based on all of this context, the Magistrate Judge concludes that the PCR court's finding that trial counsel was not ineffective for failing to locate the boyfriend was not contrary to, or an unreasonable application of, clearly established federal law, nor was such conclusion based on an unreasonable determination of the facts. (*Id.* at 21 (citing *Blasi v. Attorney Gen. of the Commonwealth of Pa.*, 120 F. Supp. 2d 451, 474 (M.D. Pa. 2000) ("Logically, counsel cannot be ineffective for failing to call a witness whose identity was unknown and could not have been known, or who was unavailable at the time of trial.")).) Accordingly, the Magistrate Judge recommends that Respondent's motion for summary judgment should be granted with respect to Ground Two. (*Id.* (citing *Berry v.*

*Palmer*, 518 F. App'x 336, 340 (6th Cir. 2013)).)[3]

In his objections, Petitioner contends that Respondent is not entitled to summary judgment on Ground Two because the PCR court's denial of relief was based on an unreliable determination of the facts presented in the state court proceeding and an unreasonable application of the *Strickland* standard to this case. (ECF No. 37 at 8-9.) Petitioner quotes the PCR court's findings regarding how trial counsel met professional norms to exculpate his client (quoted *supra*, p. 15), and then argues, "Counsel knew of all the evidence pointed out above prior to trial, since none of the evidence pointed to the Petitioner, counsel's ineffectiveness is shown by failing to pursue the third party guilt theory." (*Id.* at 10.) Petitioner further states, "It is evident from the State's evidence that the Petitioner did not commit the crime charged here, the only conclusion that can be drawn [is] that a third party committed the crime herein." (*Id.*) Moreover, Petitioner argues that the Magistrate Judge improperly relied on the *Berry* case, "where the jury rendered its guilty verdict on other evidence presented at trial," because, "in this case, there is not a scintilla of evidence presented at trial indicating that Petitioner committed this crime . . . ." (*Id.*)

While Petitioner's arguments are made in earnest, they are unpersuasive to reveal any error in the Magistrate Judge's reasoning and analysis. After reviewing the relevant portions of the record, the Court concludes that the PCR court's findings constitute neither

---

[3] In *Berry*, the Sixth Circuit Court of Appeals affirmed the denial of a § 2254 petition which raised a claim of ineffective assistance of counsel "for failing to procure a DNA analysis of the unidentified hair found on the [sexual assault] victim's bed." 518 F. App'x at 339-42. The Sixth Circuit noted that "[i]nstead of pursuing further DNA testing, trial counsel chose to argue that the unidentified hair created reasonable doubt as to [the petitioner's] guilt," so "further testing of the hair to cast doubt on [his] guilt would have been unnecessary." *Id.* at 340. Moreover, the Sixth Circuit held that the petitioner could not show prejudice where "the jury was presented with exculpatory evidence showing that the unidentified hair found in the victim's bed did not belong to [him], and it nonetheless rendered a guilty verdict based on other evidence presented at trial." *Id.*

18

an unreasonable application of the *Strickland* standard, nor an unreasonable determination of the facts. Petitioner's arguments essentially amount to an assertion that the evidence at his trial was insufficient to support a valid conviction, and that trial counsel was ineffective for failing to locate an as-yet-unidentified third-party who must be responsible for the crime. But the State's lack of forensic evidence tying Petitioner to the murder does not mean that there was no evidence to support his conviction. Two eyewitnesses (Major and Frazier) incriminated themselves at the same time they testified against Petitioner. Even if the Court was inclined to disbelieve the State's witnesses, the Court cannot, in a § 2254 proceeding, supplant a State jury's guilty verdict merely because it disagrees with the result. That is not the Court's function at this stage. The record provides every indication that trial counsel made efforts to exculpate his client that conform with professional norms, and the PCR court was not unreasonable in finding as much. *See Harrington*, 562 U.S. at 105. Accordingly, Petitioners objections are overruled, the Magistrate Judge's analysis and recommendation are adopted, and Respondent's motion for summary judgment is granted with respect to Ground Two.

## III.    Ground Three

In Ground Three, Petitioner contends that the PCR court erred when it denied PCR counsel's petition seeking funds for an investigator and experts to locate Ms. Major's boyfriend and compare the boyfriend's DNA and fingerprints to forensic evidence recovered from the crime scene. (ECF No. 1-1 at 11.)

In her Report, the Magistrate Judge determined that this claim is not cognizable on federal habeas review because it reflects an issue governed by state law. (*See* ECF No.

19

32 at 22.) As the Magistrate Judge correctly notes, "[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal *habeas corpus* relief." *Bryant v. State of Md.*, 848 F.2d 492, 493 (4th Cir. 1988); *see also Faulk v. Long*, Civ. A. No. C-13-5410 EMC (pr), 2015 WL 433578, at *8 (N.D. Cal. Feb. 2, 2015) (noting there is no "clearly established law from the Supreme Court finding a federal constitutional right to funds to investigate matters to present in a state collateral review petition"). Consequently, the Magistrate Judge recommends that summary judgment be granted as to Ground Three.

Petitioner objects to this portion of the Report by arguing that the due process clause of the Fourteenth Amendment "allows for indigent defendants to receive funds from the trial court for experts and investigators to help prepare a defense." (ECF No. 37 at 10-11.) He further states that the "failure of the PCR court to grant the Petitioner's request for funds to enable Petitioner to pursue the third party guilt defense was prejudicial to the Petitioner," because, if the PCR court had granted the funds, "Petitioner could have had all of the items re-tested that were analyzed by Donald Grindt, after the boyfriend was located." (*Id.* at 11.) If such funds had been granted, argues Petitioner, he "would not have had to rely only on Donald Grindt's testimony that evidence that [was] tested could not be linked to an individual." (*Id.*)

After review, the Court finds that Petitioner's arguments reveal no error in the Magistrate Judge's conclusion regarding Ground Three. First, it is not the province of this Court to reexamine the PCR court's determination of a state-law question in a PCR proceeding. *See Bryant*, 848 F.2d at 493. Second, there is no basis in the record to find any due process violation in connection with this ground. Accordingly, the Court overrules

20

Petitioner's objections, adopts the Magistrate Judge's recommendation, and grants

Respondent's motion for summary judgment with respect to Ground Three.

## IV.    Ground Four

As a fourth ground for relief, Petitioner asserts that he is entitled to habeas relief due

to "prosecutorial misconduct." (ECF No. 1-1 at 19.) Petitioner states (verbatim):

> Petitioner argues that Cynthia Major's and Hans Frasier's [sic] false/perjured
> testimony affected the outcome of the jury findings. SEE: Gibson v. State,
> 514 S.E.2d 320. When the solicitor deliberately deceived the court and jurors
> by presentation of known false evidence/testimony . . . . to also go
> uncorrected. SEE: Washington v. State, 478 S.E.2d 833 [sic] Which denied
> Petitioner due process per the U.S. Const. 14 Amend. SEE: Davis v. Alaska,
> 94 S. Ct. 1105; Chambers v. Mississippi, 410 U.S. 284; Crane v. Kentucky,
> 476 U.S. 683. Here, Petitioner argue [sic] that the solicitor deliberately
> compromised the integrity of the fact finding and truth seeking process by
> introducing the testimony of Major and Frasier [sic] testimony(ies) [sic].

(*Id.*) In his motion for summary judgment, Respondent asserts this claim is procedurally

defaulted because it was not raised as an objection at any time in state court. (ECF No.

19 at 32.) Respondent further argues that "there is no evidence of perjury, or that the

prosecution knowingly presented false evidence," and the "perjury . . . alleged is immaterial

because Petitioner only points to inconsistencies between Frazier and Major's recollection

of the details relating to the collective commission of the murder." (*Id.* at 33.)

In her Report, the Magistrate Judge concluded that consideration of this issue is

procedurally barred because Petitioner failed to properly raise it during trial or during the

PCR proceedings. (ECF No. 32 at 24); *see, e.g.*, *Longworth v. Ozmint*, 377 F.3d 437, 448

(4th Cir. 2004) (holding that grounds not "'presented face-up and squarely'" in state court

are procedurally defaulted (quoting *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994)).

Procedural default may be excused if the Petitioner "can demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).

Even putting aside the procedural bar, the Magistrate Judge concluded that Petitioner is not entitled to relief on the merits. (ECF No. 32 at 24-25.) "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Badsen v. Lee*, 290 F.3d 602, 614 (4th Cir. 2002). To meet his burden of proof on this claim, Petitioner would need to show that: (1) perjured testimony was presented; (2) the prosecution knew the evidence was false; and, (3) there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Boyd v. French*, 147 F.3d 319, 330 (4th Cir. 1998) (citations and internal quotations omitted).

The Report accurately notes that the testimony to which Petitioner points as purported perjury involves inconsistencies that were explored in depth at trial. (*See* ECF No. 1-1 at 21-28.) Moreover, as the Magistrate Judge establishes with extensive citations to controlling and persuasive legal authority, the introduction of testimony containing inconsistencies does not equal the subornation of perjury. (ECF No. 32 at 25.); *see, e.g.*, *United States v. Bonsu*, 291 F. App'x 505, 511 (4th Cir. 2008) (concluding appellants could not establish that the challenged testimony was perjured where appellants "knew of the [witnesses'] inconsistent statements and chose to use them extensively at trial for

22

impeachment purposes," and stating, "[a]s the trier of fact, the jury weighed the competing evidence and found the government's witnesses and evidence to be more credible"); *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony (citation omitted)).

In response to the point that his Ground Four claim is procedurally barred, Petitioner objects by arguing that a reviewing court may grant relief for plain error even if the error was not raised and preserved at trial or sentencing, pursuant to Federal Rule of Criminal Procedure 52(b) and the Supreme Court's holding in *United States v. Olano*, 507 U.S. 725, 731 (1993). (ECF No. 37 at 12.) However, neither Rule 52(b), nor the *Olano* case apply to Petitioner's § 2254 petition and this stage of review. Moreover, the admission of the testimony in question did not constitute plain error in any event.

With respect to the merits of Ground Four, Petitioner objects by arguing that the Magistrate Judge described Frazier's testimony as containing mere inconsistencies, whereas Frazier openly admitted during his testimony that he had lied in previous statements about the crime. (*See id.*) Petitioner further states that "Frazier's lies seems [sic] to be a form of tampering with the jury in that he wants them to believe lies to aid the prosecutor in obtaining a conviction in this matter." (*Id.*) However, a review of the record of trial reveals routine inconsistencies between Frazier's trial testimony and previous statements he gave to police, which is unsurprising given the fact that he was a co-defendant in a murder case and sought to minimize his conduct at first. (*See* R. at 237-327.) Furthermore, Petitioner's trial counsel heavily exploited Frazier's credibility issues

23

during cross-examination, getting Frazier to admit that he had lied in previous statements on numerous occasions. (*See id.*) Nothing in the record supports a finding that the prosecution knowingly introduced false testimony.

Petitioner has failed to show cause for his procedural default of this issue or that a miscarriage of justice will result should the Court decline to review it. Furthermore, even ignoring the procedural default, Petitioner's prosecutorial misconduct claim is without merit. The Court agrees with the Magistrate Judge that Petitioner is not entitled to relief on Ground Four no matter how one approaches the issue. Accordingly, the Court overrules Petitioner's objections, adopts the Magistrate Judge's recommendations, and grants Respondent's motion for summary judgment on this claim.

## V.     Supplemental Ground

In his amendment, Petitioner raised the following additional claim of ineffective assistance of trial counsel (verbatim):

> [T]rial counsel failed to object to the Prosecutorial misconduct, for allowing perjured testimony of co-defendant [sic] Cynthia Major and Hans Frazier. Which my/Petitioner factual basis and clear and convincing evidence can be found as pointed out under ground four. Thus, Petitioner re-argue.

(ECF No. 22 at 2.) Respondent, in his supplemental memorandum in support of summary judgment, argues that Petitioner's Supplemental Ground is procedurally defaulted. (ECF No. 30 at 2.) Additionally, Respondent argues that the Supplemental Ground does not warrant relief on its merits because "Petitioner presents no evidence of perjured trial testimony on the part of Frazier and Major, nor does he make any showing that the prosecution knowingly presented false evidence." (*Id.* at 3-5.)

The Magistrate Judge correctly concludes that Petitioner never raised this claim of

24

ineffective assistance of counsel in state court, and it is therefore procedurally barred. (*See* ECF No. 32 at 26.) However, Petitioner makes the additional argument that the Court should consider the merits of his Supplemental Ground because PCR counsel was ineffective in failing to raise this claim. (*See* ECF No. 31 at 3-4.) In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Fourth Circuit stated, "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The *Martinez* court further held, "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). In the event the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support," the procedural default precludes federal habeas review. *See Martinez*, 132 S. Ct. at 1319.

In light of the preceding analysis regarding the baseless nature of Petitioner's prosecutorial misconduct claim (Ground Four), the Magistrate Judge concludes that trial counsel was not ineffective in failing to object. (ECF No. 32 at 26 (citing *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("counsel cannot be ineffective for failing to raise a meritless claim")).) It follows that PCR counsel could not have been inadequate for failing to raise this claim during the initial collateral review proceedings because the underlying ineffective assistance claim is not "substantial." *See Martinez*, 132 S. Ct. at 1318. Furthermore, the Magistrate Judge details, by extensive citation to the record, how trial counsel effectively exploited, through cross-examination and argument, most–if not all–of

25

the inconsistencies that form the foundation of Petitioner's claim. (*See* ECF No. 32 at 26-27.) Accordingly, the Magistrate Judge recommends that Petitioner's Supplemental Ground is without merit and the procedural bar should stand. (*Id.* at 26.)

Petitioner objects, as he did with respect to Ground Four, by arguing that the Court should review the prosecutorial misconduct allegations under the "'plain error' doctrine." (ECF No. 37 at 13.) Once the Court does so, Petitioner avers, the Court will "realize how significantly the prosecutor's misconduct affected the outcome of this case" and "the ineffective assistance of trial counsel for failing to object to the prosecutorial misconduct will be presented as a meritorious issue." (*Id.*) These objections have no merit and reveal no error in the Magistrate Judge's analysis. Accordingly, the Court overrules Petitioner's objections, adopts the Magistrate Judge's recommendation, and grants Respondent's motion for summary judgment on the Supplemental Ground.

## CONCLUSION

After *de novo* review, the Court finds that the Magistrate Judge's Report fairly and accurately summarizes the case and the applicable law. Petitioner's objections evince no error in the Magistrate Judge's reasoning and recommendations. Accordingly, the Court adopts the Report (ECF No. 32) and incorporates it herein; overrules Petitioner's objections (ECF No. 37); and grants Respondent's motion for summary judgment (ECF No. 19).

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

September 30, 2016

26

Charleston, South Carolina

## **Certificate of Appealability**

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A petitioner satisfies this standard by demonstrating that reasonable jurists would find this Court's assessment of the constitutional claims to be debatable or wrong, or that the issues presented were adequate to deserve further attention. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Here, the Court finds that Petitioner has not met the legal standard for the issuance of a certificate of appealability. Therefore, the Court denies a certificate of appealability.